## WALKER *v.* THE STATE.

*Atkinson, J.*—The exception to the ruling of the presiding judge in admitting testimony, not stating what, if any, ground of objection was made thereto at the time the testimony was offered; the charge of the court complained of, that "written testimony is always the highest and best evidence—is better evidence than the oral testimony," though irrelevant, being harmless; the alleged newly discovered evidence being only cumulative in its character, and impeaching in its effect,—it does not appear that upon the trial any error of law prejudicial to the accused was committed; and the evidence bearing directly upon the main issue having established to the satisfaction of the jury the guilt of the accused, and being sufficient to support the verdict, whatever may be the impression of this court as to the probative value of the evidence, it will not reverse the judgment of the trial judge in refusing a new trial; it not appearing that in so doing he has abused the discretion which the law confers on him, but denies to the Supreme Court.                    *Judgment affirmed.*

June 10, 1895.

Indictment for murder. Before Judge Butt. Muscogee superior court. November term, 1894.

Ed Walker was indicted for the murder of Carrie Armstrong. The theory of the defense was, that the killing was accidental, and upon this question the evidence was conflicting. It appeared, that the defendant and deceased were not married but had been living together for some years. Defendant claimed, that while he was in bed with the deceased they became engaged in a playful scuffle, during which one of the pillows and his pistol, which had been placed under the pillow, slipped to the floor; that she

reached over him, got the pillow and raised back with it; that he got the pistol to put it back under the pillow, and before he could get it put back under the pillow she began playing with him again, and before he could get the pistol out of his hand, she grabbed his hand in some way (there being no light in the room), and the pistol (a self-cocking pistol) fired. The main witness for the State was Eliza Armstrong, the mother of the deceased, who occupied an adjoining room. She testified, among other things, that she was awake when defendant came to the room of deceased, heard the conversation between them previous to the shooting, and heard the shot. Her testimony indicated that there was a quarrel between defendant and deceased; that defendant was jealous as to deceased, and that the shooting was the result of the quarrel. She denied that she ever told any one that the shooting was not intentional. There was evidence for the defendant, that she did say that the shooting was unintentional. She further denied that she testified, before the coroner's jury, that she was asleep when the shooting occurred. There was evidence for the defendant to the contrary, and evidence that she testified both ways. Lelie Matthews testified for the State, that in February before the killing in September, she was walking at night, with deceased when they were overtaken by defendant; that he walked up, and deceased said, "John Smith," and defendant cursed her and said it was not John Smith, and shot towards her but did not shoot her; and that defendant afterwards said he would not hurt her for anything. It appeared that John Smith knew deceased and had visited her, or had visited the house in which she lived during two years, sometimes staying all night at the house. John Smith testified for the defense, that he knew the deceased and had been to the house but never went to see deceased at all; and that he never went to see her two years before she was killed. Defendant was found guilty with a recommendation to imprisonment for

life. His motion for a new trial was overruled. The grounds of the motion are sufficiently shown by the head-note. It does not appear that any written evidence was introduced. The alleged newly discovered testimony was by two members of the coroner's jury, that Eliza Armstrong testified before that jury that at the time of the killing she was asleep and the pistol shot waked her up; and by two other persons, that Eliza Armstrong, after the killing, stated that the killing was an acident, that she was in the room next to defendant and deceased at the time, heard them laughing and playing and heard the pistol when it fell on the floor, that defendant and deceased were as friendly as two babies and she never knew them to have any difficulty, and that deceased never suffered for anything, and defendant bought her anything she wanted.

*Carson & Williams*, for plaintiff in error.

*J. M. Terrell*, attorney-general, and *S. P. Gilbert*, solicitor-general, contra.